UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| DIANE MARIE SAWYERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-214-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security[1], | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Diane Marie Sawyers [Record No. 8] and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"). [Record No. 10] For the reasons that follow, the Commissioner's motion will be granted and the relief sought by Sawyers will be denied.

## I.

Sawyers filed an application for disability insurance benefits ("DIB") on September 30, 2013, alleging an onset disability date of May 4, 2013. [Tr. 167] Her application was denied initially and on reconsideration. [Tr. 106, 117-18] Sawyers then requested an administrative hearing before an ALJ, which was held on June 10, 2015. [Tr. 34] Following this hearing, Administrative Law Judge ("ALJ") Ben Ballengee found that the claimant was disabled for

---

[1]    Nancy A. Berryhill is now the Acting Commissioner of Social Security, and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

part of the alleged disability period (May 4, 2013, through August 13, 2014), but that she was no longer disabled beginning August 14, 2014, because her condition had improved. [Tr. 15-28] Sawyers requested review of the ALJ's decision, which the Appeals Council denied. [Tr. 1] Sawyers has exhausted her administrative remedies and this case is ripe for review pursuant to 42 U.S.C. § 405(g).

Sawyers was 54 years old at the time of the ALJ's decision. [Tr. 40] She completed high school and a RN program. [Tr. 46] Sawyers's previous employment was as a registered nurse. [Tr. 42] Her latest date working was May 4, 2013, the onset date of her alleged disability. [Tr. 44] Sawyers's employer requested that she work full time, but the claimant responded that she was unable to work five days in a row. [*Id.*] Her employer then offered Sawyers a position working evenings occasionally. However, Sawyers declined the position and was terminated. [Tr. 45]

Sawyers claimed that she was disabled due to neck pain, back pain, various spinal conditions, numbness and paresthesia in her right arm and elbow, and depression. [Tr. 194] She reported "constant knife-like pain" in her neck, into her right shoulder, scapula area, and into her right arm and fingers. [Tr. 209] Sawyers asserted that her symptoms prevent her from engaging in all sports, biking, and walking for exercise. [Tr. 211] However, she is able to make her own meals, complete some household chores, and occasionally shop for groceries. [Tr. 212]

Medical evidence from before the alleged disability onset date shows that Sawyers visited doctors with complaints of shoulder pain due to a right rotator cuff tear, back pain, neck pain, elbow pain, and right arm pain. [*See, e.g.,* Tr. 309.] Sawyers was diagnosed with cervical spondylosis with spinal stenosis and myelopathy in October 2012. [Tr. 311] Dr. Steven Kiefer

-2-

performed a cervical discectomy to address this condition.  [*Id.*]  Dr. Kiefer reported that Sawyers was "doing wonderfully" following this operation and that she could "continue to increase her activities on a graded basis," but would "hold off on running and weight lifting for at least the next 3-4 weeks."  [Tr. 314]  He also stated that Sawyers was able to "continue with some light aerobic cardiac workout" but should avoid heavy lifting and repetitive above-the-shoulder work.  [Tr. 315]

In early May 2013, Sawyers obtained an electromyography (EMG) that showed neuropathy in her right arm, suggesting cervical radiculopathy and ulnar neuropathy.  [Tr. 344-46]  On May 10, 2013, Sawyers underwent right ulnar nerve decompression surgery.  [Tr. 347]  Progress notes from May 20, 2013, indicate that Sawyers's right arm was better, but that she still had debilitating neck pain exacerbated by physical activity.  [Tr. 350]  Later, in January 2014, Sawyers underwent right C5-C6, C6-C7 and C7-T1 keyhole foraminotomies with pedicle screw stabilization at C7-T1.  [Tr. 450]

Dr. Kiefer saw Sawyers for a follow-up examination on May 14, 2014.  [Tr. 450]  He reported that the claimant had "no arm symptoms at this point; they have resolved but she does have a pressure-like feeling in her neck."  [*Id.*]  Keifer acknowledged that Sawyers liked to "workout at the gym and run" but that these activities "have had to be temporized a bit."  [*Id.*]  He further opined that Sawyer was "actually doing quite well."  [*Id.*]  Regarding treatment options, he stated that he expected "some of the neck pressure to dissipate" and was "pleased that her arm symptoms [were] absent."  [*Id.*]

Dr. Kiefer saw Sawyers for another follow-up examination in March 2014.  [Tr. 451]  He noted that her symptoms remained largely stable and that she was recovering nicely from her surgery.  [*Id.*]  Review of films of her neck showed "good position" and Kiefer concluded

that, overall, Sawyers was "doing well." [*Id*.] As a result, he cleared her to return to some activities at the gym and stated that she would "slowly increase these activities" by doing some low impact aerobics and building up from there. [*Id*.]

Dr. Kiefer again examined Sawyers on August 13, 2014. [Tr. 453] He reported that her arm pain was better, but that Sawyers still had "a bit of a pressure-like sensation in her neck." [*Id*.] However, she had been "working out avidly." [*Id*.] He then stated: "Ms. Sawyers is holding her own. She is actually doing much better than preoperatively. She has some ongoing low grade symptoms. Hopefully, these will dissipate over time." [*Id*.] As a result of these observations Kiefer concluded that he was "going to turn her loose." [*Id*.] Radiographs on this date showed anterior spurring at C3 and C4 with stable fusion and alignment. [Tr. 457]

The next treatment notes in the record from Dr. William Lester are dated March 23, 2015. [Tr. 461] Sawyers complained of neck pain, 6/10, that interfered with her sleep and numbness and tingling in the right arm and occasionally the right hand. [*Id*.] Dr. Lester found tender C6-C7, tremor with extension of the arm, 5/5 strength in both arms, and normal reflexes. [*Id*.] His impression was cervical tremor and paresthesia in both arms. [*Id*.]

Dr. Lester again examined the claimant on April 20, 2015. [Tr. 460] Sawyers reported numbness and tingling in both arms and indicated that her neck pain had increased to 7/10. [*Id*.] Dr. Lester indicated a positive Tinel's sign but a negative Phalen's maneuver. [*Id*.] He referred Sawyers to Dr. Taylor for bilateral EMG/NCV studies; however, the record does not indicate that Sawyers saw Dr. Taylor or otherwise obtained the studies. [*Id*.]

Dr. Lester completed a medical source statement on June 5, 2015. [Tr. 487] He stated that she was able to lift and carry up to 10 pounds continuously, 11 to 20 pounds frequently, 21 to 50 pounds occasionally, and 51 to 100 pounds never. [*Id*.] Lester noted that Sawyers

-4-

"may be limited by pain."  [Tr. 488]  He concluded that Sawyers had limitations in reaching, pushing, and pulling, but that she was able to handle, finger, and feel continuously with both hands.  [Tr. 489]  Dr. Lester then confirmed that Sawyers was able to perform all activities identified on the source statement, including shopping, climbing steps, preparing meals, and caring for her personal hygiene.  [Tr. 492]

The agency doctors found that Sawyers had back disorders, discogenic and degenerative, and concluded that this was a severe impairment.  [Tr. 100]  They found that her statements regarding the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the objective medical evidence.  [Tr. 101]  The consultants imposed limitations of lifting or carrying 20 pounds occasionally and 10 pounds frequently, standing or walking about 6 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday. [Tr. 102]  They also determined that she had no limitations in her ability to handle, finger, and feel.  [Tr. 103]  The doctors further concluded that Sawyers had the residual functional capacity ("RFC") to perform light work, and that she was not disabled.  [Tr. 106]

Sawyers testified during the administrative hearing before the ALJ that she was unable to work due to constant pain in her neck and numbness and paresthesia in the right arm and hand.  [Tr. 47-50]  She verified that doctors have concluded that she is not a candidate for long-term opiate therapy.  [Tr. 53]  Sawyers stated that she takes over-the-counter anti-inflammatory medications, but that these medications are not effective.  [Tr. 54]  While she is able to walk, walking on asphalt causes pain in her neck.  [Tr. 57]  The claimant is able to go shopping at the grocery store, but her husband pushes the cart for her.  [Tr. 58]  She testified that she does not "do a whole lot" during the day and primarily sits in her recliner and watches

television. [Tr. 61] She is able to complete some household chores, but is limited because of the pain. [Tr. 62-63] She also testified that Dr. Kiefer incorrectly stated that her condition was improving when in fact she continued to inform him that she was not feeling well. [Tr. 73-74]

The ALJ questioned Vocational Expert ("VE") William Ellis regarding whether there would be jobs available for a person of Sawyers's age, education, and work experience with certain limitations of movement and limitations of handling, fingering, and feeling occasionally with her right hand. [Tr. 77] The VE replied that there would not be any jobs for this hypothetical person. [Tr. 77-78]

The ALJ made two separate findings, one for the period in which he concluded that she was disabled (i.e., May 4, 2013, through August 13, 2014) and another for the period in which he concluded that she was not disabled (i.e., August 14, 2014, through the date of the decision). For both periods, he found severe impairments of status post anterior and posterior fusion of the cervical spine and peripheral neuorapathy of the right arm and elbow. [Tr. 16] Sawyers did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [Tr. 20] For the disability period, the ALJ found that Sawyers had the RFC to perform wok at the light exertional level with numerous limitations, including that she "is able to handle, finger, and feel occasionally with the right extremity. She is able to frequently engage in rotation, flexion, and extension of the neck." [*Id.*] He then concluded that Sawyers was unable to perform past work and that there were no jobs that existed in significant numbers in the national economy that she could have performed, resulting in a finding of disability. [Tr. 21-23]

Beginning August 14, 2014, the ALJ found medical improvement. [Tr. 23] He reached this conclusion based on the treatment notes from Drs. Kiefer and Lester. [*Id*.] The ALJ then determined that the medical improvement increased her RFC. [*Id*.] Like the RFC finding from the earlier period, the post-August 14, 2014 RFC also provides that she had the capacity to perform light work with limitations. [Tr. 24] The limitations mirrored those from the former RFC finding, except that the ALJ removed the limitation: "is able to handle, finger, and feel occasionally with the right extremity. She is able to frequently engage in rotation, flexion, and extension of the neck." [Tr. 20, 24] In making his RFC finding the ALJ discussed Sawyers's statements regarding her pain from the hearing, but concluded that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." [Tr. 24-25] The ALJ emphasized Dr. Kiefer's notes, as well as the significant gap in her treatment between seeing Dr. Kiefer and Dr. Lester. [Tr. 25]

The ALJ accorded great weight to the state agency's determination that she was able to occasionally lift, carry, push, or pull up to 20 pounds and able to lift, carry, push, or pull up to 10 pounds frequently. [Tr. 26] He also emphasized "treating surgeon" Dr. Kiefer's post-operational report in August 2013 that Sawyers was "working out avidly" and "doing much better" than before the operation. [*Id*.] Additionally, the ALJ discussed Dr. Lester's opinion in June 2015 in which he placed her at a range of medium work with the ability to occasionally lift 21 to 50 pounds. [*Id*.] He found Sawyers less credible than these physicians and accorded "little weight to her testimony pertaining to her activities of daily living or pain." [*Id*.]

The ALJ found "no basis" to impose limitations for handling, feeling, or fingering beginning August 14, 2014, because the claimant's only complaint was a "bit of a pressure-like sensation in the neck." [*Id*.] He then concluded that Sawyers was still not able to perform

her past relevant work, but that she could perform some light work.  [Tr. 27]  As a result, the ALJ determined Sawyers was capable of performing work that existed in significant numbers in the national economy and a finding of "not disabled" beginning August 14, 2014, was appropriate.  [*Id.*]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the requirements of the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that she suffers from a severe impairment or a combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months and that meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will

review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Sawyers first claims that the ALJ failed to properly assess the severity of her impairments. Specifically, she contends that the ALJ erred by failing to find that her right cubital tunnel syndrome with compression of right ulnar nerve and post ulnar decompression was a severe impairment. She argues that this failure constitutes reversible legal error.

Any error in the ALJ's finding that Sawyers's cubital tunnel syndrome and post ulnar decompression was not a severe impairment is harmless. The severe impairment step of the disability determination process is a *de minimis* hurdle—if the claimant is unable to demonstrate a severe impairment, the ALJ cannot find her disabled. *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 324-25 (6th Cir. 2015) (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant proves at least one severe impairment, the ALJ will then consider the remaining steps of the analysis. "[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error." *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. 2007) (internal quotation marks and citation omitted).

Here, as Sawyers acknowledges, the ALJ specifically considers her cubital tunnel syndrome and ulnar nerve decompression when discussing her severe impairments. [Tr. 16] Additionally, the ALJ considered Sawyers's use of her right arm in his RFC determination for the period in which he concluded she was disabled and the period in which he concluded that she was not disabled. [Tr. 21, 26] For the disabled period, the ALJ found that she had limited use of her right arm. [Tr. 21] However, he ultimately concluded that this condition had improved by August 14, 2014, such that it no longer imposed disabling limitations. [Tr. 23-26] The ALJ's discussion demonstrates that he considered the condition of Sawyers's right arm. He did not have commit reversible error in declining to find that her cubital tunnel syndrome and ulnar nerve decompression was a severe impairment.

Sawyers next claims that the ALJ's determination that her condition improved in August 14, 2014, is not supported by substantial evidence. She contends that the ALJ ignored evidence showing that she continued to have limitations in her handling, fingering, and feeling

after this date.  The claimant notes that: Dr. Kiefer reported some ongoing low grade symptoms on August 13, 2014; she noted symptoms of numbness at the right elbow; Dr. Lester reported a positive Tinel's sign on the right arm and he would refer Sawyers back to Dr. Kiefer if Lyrica did not help her symptoms; Dr. Lester diagnosed cervical tremor and paresthesia in both arms; and she testified to symptoms of paresthesia.

Substantial evidence exists when a "reasonable mind might accept" the relevant evidence "as adequate to support a conclusion."  *Kirk v. Sec. of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  As long as there is substantial evidence to support the ALJ's decision, it will be upheld, "even if there is substantial evidence in the record that would have supported an opposite conclusion . . . ."  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (citation omitted).  Here, substantial evidence supports the ALJ's determination that there was medical improvement in Sawyers's condition on August 14, 2014.  Even before the date that the ALJ found medical improvement.  Dr. Kiefer commented that Sawyers's condition had improved because she was "recovering from her surgery nicely."  [Tr. 451] Based on these findings, he had cleared her to return to the gym and "slowly increase" her physical activities.  [*Id.*]  When Kiefer saw the claimant on August 13, 2014, he remarked that Sawyers had been "working out avidly," was "holding her own," "doing much better than preoperatively," and concluded that he was "going to turn her loose."  [Tr. 453]

The record confirms a significant gap in treatment following this visit.  Sawyers saw Dr. Lester in March and April 2015, reporting numbness and tingling in both arms and neck pain.  [Tr. 460, 461]  Dr. Lester referred Sawyers to a physician for EMG/NCV studies, but the record does indicate that the claimant saw the physician or obtained the studies.  [Tr. 460]

In June 2015, Lester completed a source statement in which he opined that the claimant had no limitations in either hand in her ability to handle, finger, or feel.  [Tr. 489]

This constitutes substantial evidence to support the ALJ's conclusion that Sawyers's condition improved on August 14, 2014.  Sawyers relies on various portions of the record that would support a different conclusion (i.e., that the condition of her right arm and hand had not in fact improved on August 14, 2014).  However, under *Wright*, it is insufficient for the plaintiff to demonstrate that the evidence would also support the opposite conclusion.  Where, as here, there is substantial evidence to support the ALJ's determination, the determination will be upheld.

## IV.

The ALJ did not err in declining to find that Sawyers's cubital tunnel syndrome with compression of right ulnar nerve and post ulnar decompression was a severe impairment.  Additionally, the ALJ's determination that the claimant's condition had improved by August 14, 2014, was supported by substantial evidence.  Accordingly, it is hereby

**ORDERED** as follows:

1.    The Commissioner's Motion for Summary Judgment [Record No. 10] is **GRANTED**.

2.    The Plaintiff's Motion for Summary Judgment [Record No. 8] is **DENIED**.

This 3rd day of April, 2017.



Signed By:

*Danny C. Reeves*

United States District Judge